## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MARIO A. MORALES,** | ) |
| | ) |
| **Movant,** | ) |
| | ) |
| **vs.** | )     **Case No. 06 C 6219** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Respondent.** | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2006, Mario Morales, a former Chicago police officer, pled guilty to one count of

racketeering conspiracy and one count of possession of a firearm in furtherance of a drug

trafficking crime. The Court sentenced Morales to 294 months in prison. Morales has filed a

*pro se* motion pursuant to 28 U.S.C. § 2255 challenging his conviction and sentence. For the

following reasons, the Court denies Morales' motion.

### Facts

The Court recites the facts of this case from the government's summary of the evidence

against Morales presented at his January 21, 2004 change of plea hearing and from Morales' plea

agreement with the government.

From July 1996 to February 2002, Morales was a Chicago police officer assigned to the

24th District. Between May and July 2001, he conspired with James O'Neill, Gerald Cooper,

and others to steal money and drugs from drug dealers. Morales admitted to his involvement in

four separate incidents.

On May 12, 2001, Morales, O'Neill, and Cooper went to the home of Jerome Carman to see if there were drugs and money to steal. Morales wore his police badge outside of his clothing around his neck. Needless to say, however, Morales was not conducting official police business. With his gun drawn, Morales approached the basement of the residence and presented himself as a police officer. O'Neill kicked in the door of Carman's residence. Morales and O'Neill discovered multiple duffel bags containing marijuana as well as cash. Morales, O'Neill, and Cooper removed duffel bags containing more than one hundred kilograms of marijuana and more than $10,000 in cash. Morales placed the cash into a pillowcase and placed the pillowcase and the duffel bags of marijuana in the car he had driven to the residence. They then drove back to Morales' residence. Morales and the others divided the marijuana into four separate shares. Morales kept two shares, one for himself and one for another individual. Morales also kept the cash. Morales later had O'Neill sell his share of the marijuana and give him the proceeds.

On June 21, 2001, Morales and O'Neill went to Emily Rivera's residence to steal any drugs and money stored inside. Rivera was Jerome Carman's girlfriend who had recently given birth to a son that Carman had fathered. Rivera and the infant were home when Morales and O'Neill arrived. Morales presented himself to Rivera as a Chicago police officer and again wore his badge outside his clothing. He carried a gun. Morales falsely told Rivera that he had a search warrant and asked her "where's the shit?" Morales handcuffed Rivera behind her back, had her go into an upper bedroom, placed the baby on her lap, and proceeded to search the bedroom for drugs and money. Morales and O'Neill did not find any drugs or money and departed, leaving Rivera handcuffed inside.

On June 22, 2001, O'Neill directed Morales to the home of persons C and D who,

2

O'Neill indicated, might have drugs and money. Morales went to their door at approximately 6:30 a.m., approached person C, and told her that he was a Chicago police officer. Morales again wore his police badge around his neck. Person C had person D, her boyfriend, come to the door, and Morales told him that he was a police officer and was there because he received information that drugs and money may be inside. Morales pulled out his gun, entered the house, and patted down person D. Person D allowed Morales into the house and told him to look around. Morales searched the house but did not find any drugs or money.

At some point between June 12, 2001 and June 23, 2001, Morales, O'Neill, Cooper and Kevin Kane agreed to kidnap person E to force him to give them his home address so that they could steal drugs and money. On June 23, 2001, O'Neill, Cooper and Kane, seated in a van, and Morales, seated in his own vehicle, waited while person E and co-defendant Ivan Madorin conducted a marijuana transaction. After person E drove away from the transaction, Morales pulled over person E's vehicle on Western Avenue in Chicago. Morales, dressed as a police officer and with his badge shown and gun drawn, ordered person E out of the car. Morales restrained person E with plastic restraints and led him toward the van that was parked nearby. Morales intended to place person E in the van. As person E approached the van, however, he pulled away from Morales and began to run. Cooper, who was driving the van, drove away. The kidnapping attempt, therefore, was unsuccessful.

Between September 1 and 7, 2001, Morales attempted to extort approximately $5000 from O'Neill. Unbeknownst to Morales, O'Neill had already agreed to cooperate with the government and was wearing a recording device. Morales told O'Neill that he could protect him from physical violence from Latin King gang members through the use of his police powers.

3

Morales told O'Neill that if he did not pay $5000, Morales would allow the Latin Kings to harm O'Neill. Morales also asked for $950 to repair a car. Morales said that the money he demanded included $3000 for himself and $1000 for each of two police officers who were providing security.

On September 7, 2001, O'Neill and Kane, now also cooperating with the government, met Morales in a car. The FBI gave O'Neill $5,950 in cash and again equipped him with a recording device. O'Neill gave Morales $950 in cash for the car repair bill and $5000 for the cost of the protection Morales had described during the September 1 conversation.

On September 13, 2001, Morales was arrested by the FBI. On September 19, 2001, a grand jury returned a one-count indictment charging Morales with extortion based on his September 1 and 7 conversations with O'Neill. On September 18, 2002, the grand jury returned a ten-count superseding indictment, charging him with, among other things, racketeering conspiracy and drug-related offenses, three charges related to Morales' brandishing of his firearm during the drug-related offenses, and the extortion charge from the original indictment. On June 26, 2003, the grand jury returned a second superseding indictment that added other defendants.

On January 21, 2004, Morales pled guilty to count one (racketeering conspiracy) and count nine (possession of a firearm in furtherance of a drug trafficking crime) of the second superseding indictment. He entered into a plea agreement in which he admitted the facts underlying counts one and nine. He also waived his right to appeal or challenge it under 28 U.S.C. § 2255, with certain exceptions. At sentencing on May 14, 2004, the Court sentenced Morales to 210 months on count one and a consecutive 84 months on count nine. The sentence was within the applicable sentencing guidelines range. Due to a clerical delay, the judgment was

4

not entered on the docket until May 27, 2004. An amended judgment, to correct a clerical error, was entered on the docket on July 23, 2004.

On July 8, 2004, Morales wrote his attorney, Kent Carlson, requesting that he file an appeal challenging his sentence pursuant to *Blakely v. Washington*, 542 U.S. 220 (2004). Carlson contends that he never received the letter. On July 22, 2004, Morales wrote another letter checking on the status of his appeal. On July 28, 2004, Carlson responded and explained that he would not file an appeal based on *Blakely* for several reasons. First, the period in which Morales could have filed an appeal had elapsed. Second, Morales had, in his plea agreement, waived his right to appeal his sentence. Third, *Blakely* did not apply to Morales' sentence because he had admitted the conduct that formed the basis of his sentence.

On August 13, 2004, Morales filed a *pro se* notice of appeal. On August 25, 2004, the Seventh Circuit ordered Morales to file a brief stating why the appeal should not be dismissed as untimely. Morales thereafter filed with this Court a motion requesting leave to file an out of time notice of appeal, which the Court granted on November 17, 2004. The Seventh Circuit appointed Morales new counsel, Susan Kister, who on January 5, 2005 filed a brief on his behalf raising a single issue: this Court erred by interjecting itself into the plea negotiations. After the government filed its brief contending that Morales' appeal was untimely, Kister sought to dismiss the appeal and requested permission to withdraw from the case. On June 30, 2005, Morales filed an opposition to his attorney's motions. On August 2, 2005, the Seventh Circuit granted Kister leave to withdraw and dismissed the appeal as untimely.

## Discussion

Morales contends that he is entitled to have the judgment in his case vacated because he

5

was denied his Sixth Amendment right to effective assistance of counsel, the government failed to disclose *Brady* material, his plea was involuntary, he is innocent of one of the crimes to which he pleaded guilty, the prosecutor engaged in misconduct, new evidence has come to light concerning the abuse of trust sentencing enhancement applied by the Court in sentencing him, and he is entitled to be resentenced pursuant to *United States v. Booker*, 543 U.S. 220 (2005). The government argues that Morales' claims are procedurally barred because they are untimely, he waived his right to file a section 2255 motion in his plea agreement, and he failed to raise his claims on direct appeal. It also has addressed Morales' claims on the merits. Before reaching the merits, the Court will consider whether Morales' claims are procedurally barred.

### 1. Procedural bars

#### a. Statute of limitations

A section 2255 motion must be filed within one year of the date on which the movant's judgment of conviction became final. 28 U.S.C. § 2255. The government argues that Morales is barred from bringing a section 2255 motion because he filed it outside of the one year limitations period. Morales' conviction became final on the last day he could have petitioned for certiorari to the United States Supreme Court. *Clay v. United States*, 537 U.S. 522, 524 (2003). The Seventh Circuit dismissed Morales' direct appeal on August 2, 2005. Morales, therefore, had until October 31, 2005 to file a petition for certiorari. *See* Sup. Ct. R. 13(1) (party has ninety days after entry of judgment to file petition for certiorari). Morales is deemed to have filed his section 2255 motion on November 2, 2006, the day he delivered the petition to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 275 (1988). Therefore, he filed his section

6

2255 motion two days after the one-year limitations period expired.[1]

The limitations period on section 2255 motions is not jurisdictional. Rather, it is a statute of limitations subject to equitable tolling. *See Nolan v. United States*, 358 F.3d 480, 483 (7th Cir. 2004). Equitable tolling, though, "is such exceptional relief that we have yet to identify a circumstance that justified equitable tolling in the collateral relief context." *Id.* at 484. A litigant who argues that the statute of limitations is subject to equitable tolling must establish that he pursued his rights diligently and that some extraordinary circumstance stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Morales argues that the limitations period should be equitably tolled because, due to circumstances beyond his control, he was unable to learn that his direct appeal had been dismissed until fourteen months after the Seventh Circuit issued its order of dismissal. Morales' appellate attorney, Susan Kister, filed an appeal on his behalf in January 2005. When the government filed its response brief, Kister apparently realized that Morales' appeal was untimely. On April 14, 2005, Kister filed an *Anders* brief and sought leave to withdraw. On April 19, 2005, the Seventh Circuit entered an order staying briefing of the appeal and allowed Morales to respond to his attorney's request to withdraw. On May 19, 2005, Morales filed a motion for an extension of time to file his opposition to Kister's *Anders* motion. On June 30, 2005, Morales filed his opposition to the *Anders* motion. On August 2, 2005, the Seventh Circuit granted

---

[1] Morales argues that he had until November 3, 2006 to file his section 2255 motion because federal holidays are excluded from the ninety day period he had to file a petition for certiorari. Federal Rule of Civil Procedure 6(a), however, states that federal holidays and weekends are only excluded from the computation of periods less than eleven days. Fed. R. Civ. P. 6(a).

Kister's motion and dismissed Morales' appeal as untimely. Morales contends he never received a copy of the court's order granting Kister permission to withdraw and dismissing his appeal. Kister states that she does not recall whether she mailed Morales a copy. The Seventh Circuit Clerk's Office informed the government that the August 2, 2005 order would have been sent to Kister and not Morales, despite the court's order granting her request to withdraw. Resp. Brief at 16 n.14.

Morales contends that a variety of circumstances prevented him from learning about the dismissal order. He was assigned to FCI Memphis on June 15, 2004. On February 6, 2006, Morales was transferred to the special housing unit at FCI Memphis and remained there until March 23, 2006. He returned to the special housing unit on March 30, 2006. On June 8, 2006, Morales was attacked by another inmate and sustained injuries. The medical records related to the incident indicate that Morales received "minor first aid" at the prison infirmary and reported he had "no symptoms." Resp. Brief, Ex. C. On August 21, 2006, Morales was transferred from FCI Memphis to FTC Oklahoma City. On September 18, 2006, Morales was transferred to USP Atlanta, and then on September 28, 2006 he was transferred to FCI Edgefield. Morales contends that he had little or no ability to learn about the status of his appeal while in the special housing unit at FCI Memphis and was further hindered because of his injuries and multiple transfers.

In October 2006, Morales wrote Kister to check on the status of his appeal. On October 20, 2006, Kister wrote Morales and informed him that his appeal had been dismissed in August 2005. A little less than two weeks later, on November 2, 2006, Morales filed his section 2255 motion.

The Court assumes, for present purposes, that Morales did not learn that his appeal had

8

been dismissed until late October 2006, shortly before the deadline for filing a section 2255 motion. There is no evidence that indicates why he did not receive notice in August 2005 when his appeal was dismissed; one can assume that either his lawyer failed to send him the court's order, or she sent it but the Postal Service or prison officials failed to deliver it. Clearly, someone dropped the ball. Based on the facts in the record, however, Morales cannot establish that he diligently pursued his appellate rights and that an extraordinary circumstance prevented from timely filing his section 2255 motion, as required to equitably toll the statute of limitations.

Even if Morales' attorney failed to provide him a copy of the dismissal order, such an error does not equitably toll the statute of limitations. *See Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999) (lawyer's mistake is not basis for equitable tolling). At the end of the day, Morales bore the responsibility to see that the filing deadline was met. *See Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003) ("petitioners bear ultimate responsibility for their filings . . . . [W]hether in prison or not, [litigants] must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands.") (citation omitted). And in this case, even if Morales did not receive the dismissal order, he certainly was on notice that such an order was possible. After all, he knew that his attorney had asked to withdraw from the case because she believed the appeal to be frivolous. Yet he made no inquiry regarding the status of counsel's motion during the fifteen months that passed between June 30, 2005, when he filed his opposition, and October 2006. He did not diligently pursue his rights.

Nor can Morales show that he was prevented from making a timely filing due to extraordinary circumstances. Even if being housed in the special housing unit prevented him from contacting the Seventh Circuit clerk's office or his former lawyer, he was only housed in

9

that unit for approximately half the time that the statute of limitations on his section 2255 motion was running. *See United States v. Cicero*, 214 F.3d 199, 204 (D.C. Cir. 2000) (equitable tolling not appropriate for prisoner in segregation for portion of one year limitations period because prisoner had ample time to prepare petition prior to restrictive placement). Nor are Morales' transfers between prisons an extraordinary circumstance. *Montenegro v. United States*, 248 F.3d 585, 594 (7th Cir. 2001) (equitable tolling not justified by lack of response from attorney, language barrier, lack of legal knowledge, and transfer between prisons), *overruled on other grounds by Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001). Finally, Morales' medical records do not indicate that any of his medical issues were sufficiently serious or debilitating to prevent him from filing his petition. Rather, the records show that he received minor first aid, claimed to have no symptoms, and was not hospitalized.

Morales does appear to have diligently pursued his rights after he belatedly took steps to learn in October 2006 that his direct appeal had been dismissed. In fact, he was able to file his section 2255 petition within days of learning from Kister that the Seventh Circuit had dismissed his appeal as untimely the previous year. But that hardly helps Morales' equitable tolling argument. Rather, it merely highlights that had he been diligent in pursuing his rights earlier, he would have been able to file a timely section 2255 motion and that no extraordinary circumstances stood in his way.

For these reasons, the Court concludes that Morales' motion is time-barred and not subject to equitable tolling. Nonetheless, to create a complete record, the Court will consider the government's other procedural arguments and will consider any surviving claims on the merits.

### b. Plea agreement waiver

The government argues that the waiver in Morales' plea agreement forecloses him from

filing a section 2255 motion. The waiver states that

> the defendant knowingly waives the right to appeal any sentence within the
> maximum provided in the statutes of conviction (or the manner in which that
> sentence was determined), in exchange for the concessions made by the United
> States in this Plea Agreement. The defendant also waives his right to challenge
> his sentence or the manner in which it was determined in any collateral attack,
> including but not limited to a motion brought under Title 28, United States Code,
> Section 2255. The waiver in this paragraph does not apply to a claim of
> involuntariness, or ineffective assistance of counsel, which relates directly to this
> wavier or to its negotiation.

Gov't Ex. 2, ¶18. This waiver does not preclude Morales from filing a section 2255 motion

challenging his conviction; the waiver, as worded, relates only to motions challenging his

sentence. *See Ballinger v. United States*, 379 F.3d 427, 429 (7th Cir. 2004) (challenge to

conviction in a § 2255 petition is outside the scope of a waiver relating to sentencing).

The waiver does, however, preclude Morales from raising claims challenging his sentence

unless they involve a contention that the waiver in the plea agreement was involuntary or resulted

from ineffective assistance of counsel. Several of Morales' claims fall within the scope of the

waiver. These include his claims that the prosecutors engaged in misconduct at the sentencing

hearing (ground five), his claim that the pre-sentence report incorrectly included a two-point

enhancement for abuse of a position of public trust (ground six), and his claim that he must be

resentenced pursuant to *United States v. Booker*, 543 U.S. 220 (2005) (ground seven). These

claims are procedurally barred because Morales waived his right to raise such issues in a section

2255 motion.

In a separate part of his prosecutorial misconduct claim, Morales argues that the

11

prosecutors engaged in misconduct by misrepresenting certain facts during the January 21, 2004 change of plea hearing. This claim relates to Morales' conviction, not his sentence. He therefore did not waive in the plea agreement his right to bring this part of his misconduct claim.

Morales also alleges twenty-two separate bases for his claim that he received ineffective assistance of counsel (ground one). Many of these contentions relate to sentencing issues that do not fall within the narrow exceptions to the waiver set forth in the plea agreement. These include his arguments that his attorney gave Morales bad advice that caused him to receive a two-level enhancement for obstruction of justice; advised him not to speak at the sentencing hearing; failed to follow his instructions that he did not want to admit facts that would enhance his sentence; failed to review with him the government's sentencing proffer; failed to inform him that he could object to the pre-sentence report; failed to object to the quantity of marijuana taken into account at sentencing; failed to file a motion under U.S.S.G. §5K1.1 seeking a sentencing reduction due to his assistance to the government; and failed to tell the Court at sentencing that he only left Emily Rivera handcuffed for several minutes, not one hour.

Plea agreements that include a waiver of the right to challenge a sentence by way of a section 2255 motion are enforceable. *See Bridgeman v. United States*, 229 F.3d 589, 591 (7th Cir. 2000). Because Morales waived his right to assert each of these claims, he is barred from raising them in a section 2255 motion.

### c.    Failure to raise issues on direct appeal

The government also argues that five of Morales' claims are procedurally barred because he failed to raise them on direct appeal. These include his *Brady* claim, his claim that his guilty plea was involuntary, his claim that he is innocent of one of the crimes to which he pleaded

12

guilty, his claim that government prosecutors engaged in misconduct by misrepresenting facts to the Court, and his ineffective assistance of counsel claims.

A petitioner may not raise issues in a section 2255 petition that were raised on direct appeal, absent a showing of changed circumstances, non-constitutional issues that could have been raised on direct appeal but were not, and constitutional issues that were not raised on direct appeal, unless the petitioner demonstrates good cause and prejudice for the failure. *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991). Morales' direct appeal concerned only one issue: whether the Court improperly interjected itself into the plea negotiations. The Seventh Circuit did not reach that issue on the merits because it dismissed the appeal as untimely.

Each of Morales' arguments, however, are based at least in part on material that was outside the record in this Court through the imposition of judgment. Morales thus could not have raised these issues on direct appeal. *See Galbraith v. United States*, 312 F.3d 1001, 1007-08 (7th Cir. 2002) (appellate court limited to facts in the record and may not consider any extrinsic evidence).

Morales argues that the government withheld exculpatory evidence that would have shown he did not possess a weapon during the shakedowns to which he pleaded guilty. There was no evidence in the record at the time of judgment that the government withheld any exculpatory information; as a result, Morales could not have brought his *Brady* claim on direct appeal. The same is true of his claim that his plea was involuntary. In his present claim, Morales relies, in part, on evidence that was not in the record at the time of his conviction.

The government also argues that Morales waived his actual innocence and prosecutorial misconduct claims by not raising them on direct appeal. Morales limits his actual innocence

13

claim to his conviction for using a weapon in furtherance of a drug crime (18 U.S.C. § 924). In support, he points to Emily Rivera's alleged statements that she never saw Morales brandish a weapon as evidence of his innocence. Rivera's statements were not part of the record at the time of judgment and therefore could not have formed the basis of an appeal.

The Court has already found that Morales waived in his plea agreement the right to bring the sentencing-related part of his prosecutorial misconduct claim. The remainder of the claim relates to alleged misstatements regarding Morales' use of a firearm made by the prosecutor during Morales' change of plea hearing. Morales argues that these misstatements led the Court to be dissatisfied with certain terms of Morales' plea agreement, which, in turn, allegedly led Morales to enter into a revised plea agreement with the government on terms that he views as less favorable. Again, the alleged evidence that Morales did not brandish a weapon was not in the record when the Court entered judgment. Morales thus could not have brought this claim on direct appeal.

The government also contends that Morales waived his ineffective assistance of counsel claims because he was represented by different counsel on direct appeal and failed to raise the issues. The government has inexplicably overlooked *Massaro v. United States*, 538 U.S. 504 (2003), which squarely holds that ineffective assistance claims should not be subject to "the usual procedural default rule," and that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Id.* at 504; *see also Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004). As a result, Morales did not waive his ineffective assistance of counsel claims by failing to raise them on direct appeal.

14

### d. Collateral attack on guilty plea; voluntariness of plea

Morales alleges that the government withheld *Brady* material, that he is actually innocent, and the prosecutor engaged in misconduct at his change of plea hearing. Each of these claims is, in effect, a challenge to Morales' guilty plea to the charge that he possessed a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924. It is settled law, however, that "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *United States v. Broce*, 488 U.S. 563, 574 (1989) (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). If Morales' plea was voluntary and he was properly advised by counsel regarding his plea, he may not raise these claims in a section 2255 motion.

The question whether a defendant is competent to plead guilty focuses on "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding[,] whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *Godinez v. Moran*, 509 U.S. 389, 398-99 (1993) (standard governing competency to plead guilty is the same as that used to evaluate competency to stand trial).

Pursuant to Federal Rule of Criminal Procedure 11, the Court had a colloquy with Morales at his change of plea hearing to ensure that his plea was voluntary and he knew the consequences of pleading guilty. Morales stated that no one promised him anything outside the plea agreement to entice him to plead guilty; he was pleading guilty without threats and of his own free will; there were no agreements with the government outside the scope of the plea agreement; he had discussed the plea agreement with his counsel; he had no trouble

15

understanding what his lawyer told him regarding the consequences of pleading guilty; his attorney answered all the questions he had; he was satisfied with his attorney's work; he carefully read the plea agreement before signing it; and he agreed with the prosecutor's recitation of the facts, including those relating to the gun possession charge. In short, Morales unequivocally affirmed under oath at the plea colloquy that his guilty plea was voluntary and that his attorney competently explained the consequences of pleading guilty. The Court likewise explained those consequences to Morales thoroughly during the plea colloquy.

The evidence Morales puts forth to support his contention that his guilty plea was involuntary is unpersuasive. Morales points to several instances when he made references to God when speaking in court as evidence that he was incompetent. The Court has reviewed the transcripts of those proceedings. It was clear to the Court at the time, and it is clear from the context of the transcripts, that Morales was expressing his religious faith and was not suffering from delusions. For example, Morales told the Court that "in the name of my family and my children, I'm going to probably end up representing myself." Dec. 6, 2002 Tr. at 7. Later in that hearing, after the Court counseled Morales against proceeding *pro se*, Morales stated "I believe in the truth and in our paths of justice and I believe also in doing the will of God, and I'll take what you said into account." *Id.* at 9. At the change of plea hearing, Morales said "Before you, before God, and before my family, I plead guilty, your Honor." Jan. 24, 2004 Tr. at 33. He never suggested that he was hearing voices or that God was talking to him directly.

After he began serving his sentence and, according to Morales, once again competent, Morales continued to refer to his religious faith in a similar manner. For example, in February 2005, he concluded a letter to Kister by saying "[t]hank you in advance for you[r] help and

dedication, I hope that God give you patien[ce] and wisdom to understand my concern." Reply Brief Ex. C. In April 2005, he wrote, "I await your response to what you think about these ideas. Thank and May the GOD of the Universe bless you so you'll bless me." *Id.* The fact that Morales continued to make such references after he claims to have regained competence is significant evidence that his similar references at the plea colloquy do not suggest incompetence.

Morales attaches an affidavit from his pastor, Angel Flores, which Morales apparently believes supports his claim of incompetence. The pastor avers, however, that he told Morales that he did not need anti-psychotic medication anymore and that he "observed [Morales'] post-arrest interaction with his children and the youth group at the Church to be appropriate and positive." Reply Brief, Ex. A at ¶¶ 4, 8. Even if Pastor Flores' affidavit were competent evidence regarding Morales' competency to plead guilty (which the Court doubts), nothing in it suggests that Morales' guilty plea was involuntary.

Morales also points to the medication he currently takes in prison as evidence that his guilty plea was involuntary. Morales contends that he currently takes medication to treat headaches (Propranolol), depression (Fluoxetine), and pain from his June 8, 2006 prison assault (Naproxen). He also contends that he takes Mirtazapine, which he describes as a "powerful anti-psychotic drug" to treat anxiety, paranoia, mood-swings, psychotic behavior and to help him sleep. Reply Brief, Ex. H. Morales has not submitted any evidence that he had these conditions at the time he pleaded guilty or, even if he had, that his untreated headaches and depression would have been severe enough to render him unable to consult with his lawyers or understand the proceedings. To the contrary, at the change of plea colloquy, Morales told the Court that he had no trouble understanding the proceeding and its consequences and was able to consult with

17

his lawyers. Moreover, there is no evidence that Morales has ever suffered from psychosis. He has provided no support for the proposition that Mirtazapine is an anti-psychotic medication. The Court has likewise found no such evidence on its own. Specifically, on-line references indicate that Mirtazapine is used to treat depression, not psychosis. Remoron (mirtazapine) prescribing information, http://www.remeronsoltab.com/Authfiles/Images/292_73427.pdf (last visited June 21, 2007); Wikipedia, http://en.wikipedia.org/wiki/Mirtazapine (last visited June 21, 2007). To be clear, the Court relies on the absence of evidence submitted by Morales, not on Internet references. But these references do tend to support the proposition that Mirtazapine is not an anti-psychotic medication.

The Court concludes that Morales' guilty plea was knowing and intelligent and that he was properly advised by counsel regarding the consequences of pleading guilty. For this reason, Morales may not collaterally attack his guilty plea by asserting his *Brady* and actual innocence claims or his prosecutorial misconduct claim involving alleged misstatements of evidence regarding his brandishing of a gun.

## 2. Morales' ineffective assistance of counsel claims

Morales raises five alleged instances of ineffective assistance of counsel that do not relate to sentencing: his attorney failed to interview witnesses in preparation of trial, failed to retain a private investigator, failed to order a psychiatric evaluation, failed to file an appeal and consult with Morales regarding the merits of an appeal, and failed to "follow up on defendant['s] request to look into issue of no specification of the precise pattern of racketeering." Motion ¶ 21.

To prevail on a claim of ineffective assistance of counsel, a convicted person must show that "counsel's representation fell below an objective standard of reasonableness" and "any

18

deficiencies in counsel's performance [were] prejudicial to the defense . . . ." *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984). When a defendant has pleaded guilty, prejudice requires a showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In a section 2255 motion, a defendant must do more than merely allege that he would have gone to trial. *Bethel v. United States*, 458 F.3d 711, 718 (7th Cir. 2006). Rather, he must "establish through objective evidence that a reasonable probability exists that he would have gone to trial." *Berkey v. United States*, 318 F.3d 768, 773 (7th Cir. 2003). Morales has not done this. He has not alleged that there is a reasonable probability he would have gone to trial but for his attorney's alleged errors, let alone provided any evidence in support of this position. Therefore, he cannot show that he was prejudiced by his attorney's alleged ineffective assistance.

Even if Morales could show prejudice, his ineffective assistance claims fail because he has failed to show that his attorney's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. Morales contends that his attorney failed to interview several witnesses, including his mother and sister, in preparation for trial. Counsel avers that he did interview the witnesses suggested by Morales when it appeared that the case would proceed to trial. The attorney concedes that he did not interview Morales' mother or sister. Morales has made no showing, however, that his mother or sister were witnesses to any of the crimes or could have provided any exculpatory evidence. In the case of an uncalled witness, "at the very least the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial." *United States v. Kamel*, 965

19

F.2d 484, 491 (7th Cir. 1992). Morales has not done that. In addition, to the extent that Morales contends his mother and sister could have provided information helpful to him at sentencing, Morales waived in his plea agreement his right to assert such a claim.

Morales also contends that his attorney rendered ineffective assistance because he failed to utilize a private investigator to interview a woman who Morales claims had mitigating evidence. He claims that the potential witness would have testified that James O'Neill stalked her and threw a brick through her window; O'Neill lied to the FBI about Morales using a gun during the crimes; O'Neill was paid by the FBI to set up Morales; and O'Neill took advantage of a "drunk cop." Reply Brief at 28. Morales' attorney does not recall Morales telling him about this potential witness. In any event, a section 2255 movant who claims his trial counsel was deficient in failing to track down and interview witnesses must present sufficiently precise information as to the nature and probable effect of evidence that would have been obtained had counsel undertaken desired investigation. *United States v. Farr,* 297 F.3d 651, 658-59 (7th Cir. 2002). Morales has not done that. Moreover, any testimony the unidentified witness could have given would have had little effect in light of Morales' admissions.

Morales argues that he received ineffective assistance of counsel because his attorney failed to order a psychiatric examination that had been authorized by the Court. The purpose of the requested psychiatric exam was to determine whether Morales was insane at the time of the charged offense, not to determine his competency to stand trial or plead guilty. Morales discussed a potential insanity defense with his attorney and decided not to pursue it. Morales now argues that his attorney should have arranged a psychiatric exam to determine his competency.

When a defendant argues that he received ineffective assistance of counsel because his attorney should have requested a competency hearing, a court must determine whether there is a reasonable probability the defendant would have been found unfit had a hearing been held. *Eddmonds v. Peters,* 93 F.3d 1307, 1317 (7th Cir. 1996). Morales has not presented evidence sufficient to permit a finding that there is a reasonable probability that he would have been found incompetent had his attorney requested a competency exam or hearing.

The facts Morales relies upon are scant evidence of incompetence. As discussed above, Morales' references to his faith are not evidence of incompetence. *See* section 1(d) *supra.* Morales' argument that his attorney rendered ineffective assistance by failing to request a competency examination or hearing is also rebutted by the statements and demeanor of Morales while in court. At Morales' change of plea hearing, the Court asked Morales specific questions about his mental health, his current use of drugs and alcohol, and whether he was proceeding voluntarily. Morales answered each of these questions in an articulate and lucid manner. Morales informed the Court that while he was out on bond, he taught eighth grade in a public school and was working as an investigator for child abuse and neglect cases. He told the Court that he did not need medication and was not being treated by a psychiatrist. The Court asked Morales, "[f]rom your perspective, have you had any trouble in terms of understanding what your lawyer is telling you, in terms of understanding the proceedings and the possible consequences? Have you had any trouble with those items?" Dec. 24, 2004 Tr. at 12. Morales responded, "[n]o, I have not, your Honor." *Id.* Moreover, the Court had the opportunity to observe Morales at length on these and other occasions. He did not exhibit any signs suggesting that he was unable to consult with his lawyers or did not have a rational and factual understanding of the

21

proceedings.

Based on these facts, Morales has failed to show that his attorney rendered ineffective assistance by failing to seek a competency evaluation or hearing. Specifically, Morales has come nowhere near showing that if such a hearing had been held there was a reasonable probability he would have been found unfit.

Morales also alleges that he received ineffective assistance of counsel because his attorney failed to file an appeal challenging his sentence. The attorney's decision not to file an appeal was not objectively unreasonable, because Morales had waived his right to appeal his sentence in the plea agreement he entered into with the government. An appeal would have been frivolous.

Morales also contends that he received ineffective assistance of counsel because his lawyer failed to "follow up on [his] request to look into issue of no specification of the precise pattern of racketeering." Motion at 3. This argument is not developed, and it is not clear exactly what Morales is suggesting. The government interprets this argument as challenging the sufficiency of the racketeering allegation in the second superseding indictment. An indictment is sufficient if it states all the elements of the offense charged, informs the defendant of the nature of the charge, enabling the defendant to prepare a defense, and enables the defendant to plead the judgment as a bar to later prosecution of the same offense. *United States v. F.J. Vollmer & Co., Inc.*, 1 F.3d 1511, 1518 (7th Cir. 1993). In reviewing the sufficiency of the indictment, a court considers the challenged count as a whole and refrains from reading it in an overly technical manner. *United States v. McNeese*, 901 F.2d 585, 602 (7th Cir. 1990). The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it

22

conforms to minimal constitutional standards. *United States v. Webb*, 747 F.2d 278, 284 (5th Cir. 1984).

Based on this standard, the racketeering charge in the indictment was sufficient, and it was not objectively unreasonable for Morales' attorney not to challenge it. The racketeering charge clearly stated all the elements of the offense, put Morales on notice regarding the nature of the offense, and enabled him to plead double jeopardy if charged again in the future.

A number of Morales' ineffective assistance of counsel claims also fail because they are based on assertions that contradict the statements in his plea agreement and at the change of plea hearing. It is well established that a defendant cannot repudiate statements made at a plea colloquy and in a plea agreement through contradictory allegations in a section 2255 motion. *See United States v. Suggs*, 374 F.3d 508, 520 (7th Cir. 2004). Morales' ineffective assistance claims regarding his attorney's failure to investigate and order a psychiatric evaluation fail for this reason as well.

## Conclusion

For the foregoing reasons, the Court denies Morales' section 2255 motion [docket nos. 1 & 5]. The Clerk is ordered to enter judgment in favor of the respondent.

MATTHEW F. KENNELLY
United States District Judge

Date: June 21, 2007

23